a great deal, and sometimes became so drunk that she had fits or spasms, etc., etc. No affidavits supporting the character or credibility of the newly discovered witnesses appear in the record. The affidavit of counsel for the defendant states merely, "that none of the evidence contained in the affidavits were communicated to him by the witnesses until after the trial."

SMITH & PENDLETON, for plaintiff in error.

CHARLES Z. BLALOCK, contra.

---

## MORRIS v. MORRIS.

<div style="float:right">95 535<br>108 252</div>

LUMPKIN, J.—This being an action of deceit, and there having been no misrepresentations on the part of the defendant to induce the plaintiff to enter into the contract in question, and no misplaced confidence upon the part of the plaintiff; and it appearing that, although the parties were brothers, they dealt each with the other at arms' length, acting each upon his own judgment; and the transaction being otherwise free from fraud, there was no error in granting a nonsuit.                    *Judgment affirmed.*
November 26, 1894.

Action of deceit. Before Judge VAN EPPS. City court of Atlanta. March term, 1894.

Plaintiff and defendant were legatees, and defendant was one of the executors, of the estate of their father, who died in May, 1881, leaving various parcels of realty, among them a lot on Broad street in Atlanta. Plaintiff was about forty years old in 1890; defendant about ten years older. Numerous trades, exchanges, etc., had taken place between them and the other legatees, involving the property of the estate. In all these matters plaintiff dealt on his own judgment. In September, 1890, defendant went to Douglasville where plaintiff was then residing, and opened negotiations with him looking to an exchange of his interest in the Atlanta property for a body of farm land in Douglas county. They had previously had three or four conversations regarding the

matter, going back over a period of about a year. Defendant offered to give the Douglas land for plaintiff's interest in the Atlanta property with $500 boot, and stated that the Atlanta property was assessed at $12,000 by competent men. Plaintiff declined this, and stated he thought the property was worth $16,000. Defendant then offered to swap for a horse to boot; which plaintiff declined. They finally agreed on an even exchange, estimating the Atlanta property as worth $16,000; and gave deeds to each other that evening. A few days afterwards, defendant sold to one Ryan his interest in the Atlanta property, including that he had acquired in the exchange, at a price based on a valuation several thousand dollars greater than $16,000. A good while before, Ryan had told defendant that whenever the property was for sale, he would like to buy it. Plaintiff ascertained that the property had been sold to Ryan, about a year afterwards; and on refusal by defendant to divide profits or take back the Douglas land, brought this suit for damages. He alleged, that at the time of the exchange he knew nothing of the value of the Atlanta property; that defendant, by reason of his business qualifications and being a resident of Atlanta, had had the management of it; that he told the plaintiff the property was only given in at $12,000, and falsely represented that the price he put on it was its full market value; that plaintiff had all confidence in his brother, and no reason to doubt his statement as to said value; that at the time of the trade defendant had bargained the property to Ryan for the larger price he afterwards received, and his purpose was to buy up plaintiff's interest as cheaply as possible and thereby defraud him out of several thousand dollars, and in this way he did deceive and defraud him out of the sum representing the difference between the amount at which his interest in the property was valued, and the sum at which it was sold.

Plaintiff testified: I knew nothing of the market value of the Atlanta property in 1890, except what my brother told me. I came to Atlanta from three to six times a year. I had never asked any one what it was worth. What induced me to make the trade was, I thought I was getting the full value of the property, and the Douglasville land was worth fully as much. I thought I knew what that land was worth. I had other land in three or four miles of it, and thought my brother was telling me what the Atlanta property was worth. He did not tell me anything about any negotiations pending with any one else as to this property. It is true I knew all about this property in Atlanta, and had measured the frontage of it before the trade was made, and found it to be 27 feet. I knew about the Seltzer property that brought $1,200 a front foot. Defendant did not lead me to believe the property in question was worth $16,-000; that was my own estimate. He said he thought it was assessed at its value. I did not know whether that was true; I thought it was not. I reached the value of it from my own judgment. I did business in that Ryan house once; was there about a year; knew it well; was acquainted with many people in Atlanta; knew some real estate men; had every avenue to ascertain the opinion of anybody as to the value of that property. It is true that, about two or three months after the trade, I bragged about it, and stated that I was perfectly satisfied and would not begin to swap back with him. I knew he was trading for himself and not as executor. I do not know of any fact connected with the estate that he concealed from me. I lived in Atlanta from 1869 about eight years. Up to the time of this trade we had sold and disposed of all the property of the estate, except this and one other piece, and dealt with each other, each taking care of himself. I was trying to make the best trade I could. About three months before

we traded, I told him I would give him my interest in the Atlanta property for his land in Douglas; etc.

R. J. JORDAN, for plaintiff.     J. A. ANDERSON and DOR-SEY, BREWSTER & HOWELL, for defendant.

---

The County of Walton *v.* Franklin *et al.*

SIMMONS, C. J.—The county authorities have no power to hire out convicts sentenced under the provisions of section 4310 of the code, to a private individual, whether being so hired they be worked in chain-gangs or otherwise, and so much of the acts of the legislature embodied in sections 4814, 4815, 4820 and 4821(e) of the code as authorizes such a hiring is repealed by the act of August 11, 1879 (Code, ¾4310). Hence, where an ordinary hired convicts to an individual to be worked in a chain-gang, and took a bond from him for the faithful performance of his contract, and the individual refused to take the convicts, in a suit for a breach of the bond, these facts being alleged in the petition, it was not error to sustain a general demurrer thereto. Notwithstanding a seeming expression to the contrary in the head-note announced in the case of *Walton County* v. *Powell*, 94 *Ga.* 646, that case is distinguishable from the present. There the written contract had been executed, and the hirers themselves recognized its legality, but sought to avoid its terms by proving a parol contract conflicting with the same.                         *Judgment affirmed.*
December 21, 1894.

Action on bond. Before Judge CLARK. Newton superior court. March term, 1894.

On September 27, 1890, the County of Walton by its ordinary entered into a contract with Franklin, whereby it agreed to deliver to him at its jail all convicts sentenced by the superior and county courts to work in the chain-gang upon the public works, during the years 1891 and 1892; he representing in this contract that he maintained in Newton county a public chain-gang inspected by the grand jury of that county, with suitable provision for the safe-keeping and management of such convicts as might be placed under his charge by the county authorities for the purpose of carrying out the sentences of the courts; and agreeing to pay certain